**Finkelstein v U.S. Bank, N.A.**

2025 NY Slip Op 33020(U)

July 30, 2025

Supreme Court, New York County

Docket Number: Index No. 651317/2023

Judge: Melissa A. Crane

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. MELISSA A. CRANE**      PART      **60M**

*Justice*

-------------------------------------------------------------------X

STEPHEN FINKELSTEIN,

         Plaintiff,

- v -

U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE
(AND ANY PREDECESSORS OR SUCCESSORS
THERETO), NEWREZ LLC D/B/A SHELLPOINT
MORTGAGE SERVICING, PHH MORTGAGE
CORPORATION, WELLS FARGO BANK, N.A.

         Defendant.

-------------------------------------------------------------------X

| INDEX NO. | 651317/2023 |
|---|---|
| MOTION DATE | 03/05/2025 |
| MOTION SEQ. NO. | 005 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 146, 147, 148, 149, 150, 151, 162, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 279, 281

were read on this motion to/for         DISMISS         .

This is the Trustee's motion to dismiss round 2. The court entertained similar arguments in the last round of motions, including that the Trustee had the obligation to ensure that the termination price was accurate (*see* 10/30/2024 tr [EDOC 129] at 20). On this motion, the court again dismisses the complaint.

The relevant Pooling and Service Agreement (PSA) specifies the ways in which the Trust can terminate. As is typical for many RMBS transactions, once the underlying mortgages reach a point where they are sufficiently paid down, the PSA gives the Servicer[1] an optional right to conduct a "clean-up call." This allows the Servicer to purchase all of the Trust's remaining assets (consisting primarily of remaining mortgage loans and any repossessed properties) for a

---

[1] The servicer in an RMBS Trust has the responsibility to administer the mortgage loans within that Trust.

**651317/2023 STEPHEN FINKELSTEIN vs. U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE (AND ANY PREDECESSORS OR SUCCESSORS THERETO) ET AL Motion No. 005**      **Page 1 of 6**

1 of 6

certain calculated price (the "Termination Price"). Once the servicer pays the Termination Price, the Trust terminates (Second Amended Complaint [SAC], ¶¶ 35-41; Ex 1, § 9.01 [a]). Plaintiff alleges he was underpaid because the Servicer calculated the Termination Price here incorrectly.

It is undisputed that the PSA agreement governing the Trust here has what is known as a "no action" clause. The Certificate Holders are not allowed to bring suit unless they first demand that **the Trustee** take action (*see* PSA, section 11.03, entitled "Limitation of Rights of Certificate Holders" [EDOC 160]).

At times, courts will excuse compliance with the no action clause when the allegations are such that demand would be tantamount to asking the Trustee to sue itself (*see Deer Park Rd. Mgmt. Co., LP v Nationstar Mortg., LLC*, 233 AD3d 564, 565 [1st Dept 2024]; *Commerzbank AG v U.S. Bank, N.A.*, 100 F4th 362 [2d Cir. 2024], *cert. denied,* 145 S Ct 279 [2024]; *see also* discussion in this court's decision and order resolving Mot. Seq. Nos. 6-8).

To circumvent the strictures of the no action clause, it became necessary for plaintiff to accuse the Trustee of misdeeds to make it look like demand would be futile. Accordingly, plaintiff has lobbed speculative allegations regarding a supposed plot involving the entire RMBS industry. What plaintiff does not do is allege any specific facts showing that termination of the Trust in this case was part of this alleged scheme. Moreover, each of the derelictions of duty that plaintiff accuses US Bank of fall apart on closer scrutiny.

As opposed to other types of Trustees, the role of a RMBS trustee generally entails performing specifically defined, ministerial duties (*see e.g. IKB Int'l , S.A. v Wells Fargo Bank, N.A.*, 40 NY3d 277, 285 [2023] ["A pre-EOD [Event of Default] Trustee's role is essentially ministerial; a Trustee has only a duty to avoid conflicts of interest and a duty to perform

[* 2]

ministerial tasks with due care, in addition to any express duties provided by the governing agreements."]).

Here, nothing in the PSA required the Trustee to check the termination price or the Servicer's math. The PSA entitled the Trustee to rely on calculations other transaction parties performed without verifying them (*see e.g.* PSA, § 8.02 [a] [i][2]). The Trustee has no duty to investigate absent direction from a specified percentage of investors (*id.* §§ 8.02 [a] [i], [a] [v][3]). Under the PSA, before an EOD, the Trustee's duties include "only such duties as are specifically set forth in th[e] Agreement" and are "determined solely by the express provisions of th[e] Agreement" (*id.*, § 8.01). "Any permissive right of the Trustee enumerated in this Agreement shall not be construed as a duty" (*id.*). Plaintiff's bald assertions, that the Trustee knew the termination calculation was wrong, lack any factual support. In fact, the Trustee lacked official notice, because plaintiff failed to comply with the no action provision.

Only after an EOD occurs does the trustee assume a duty to exercise any of its rights enumerated in the PSA as a "prudent person."

> "During an event of Default, the Trustee shall exercise such of the rights and powers vested in it by th[e] Agreement, and use the same degree of care and skill in their exercise as a prudent person would exercise or use under the circumstances in the conduct of such person's own affairs"

(*id.*).

---

[2] This section states "The Trustee may request and rely conclusively upon and shall be fully protected in acting or refraining from acting upon any resolution, Officers' Certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties."

[3] This section states "Prior to the occurrence of an Event of Default hereunder and after the curing of all Events of Default which may have occurred, the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, approval, bond or other paper or document, unless requested in writing to do so by the Holders of Certificates entitled to at least 25% of the Voting Rights."

**651317/2023 STEPHEN FINKELSTEIN vs. U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE** **Page 3 of 6**
**(AND ANY PREDECESSORS OR SUCCESSORS THERETO) ET AL**
**Motion No. 005**

3 of 6

The Servicer's failure to pay the full Termination Price can arise only under section 7.01 (a) (i) of the PSA. That provision states:

"Events of Default.
(a) "Event of Default," means any one of the following events:
(i) any failure by the Servicer to remit to the Master Servicer any payment or deposit required pursuant to this Agreement (other than a P&I Advance required to be made from its own funds on any Servicer Remittance Date pursuant to Section 4.03) that continues unremedied for a period of two Business Days after the date upon which written notice of such failure, requiring the same to be remedied, shall have been given to the Servicer by the Depositor, the Master Servicer or the Trustee, or to the Servicer, the Depositor, the Master Servicer and the Trustee by FSA or the Holders of Certificates entitled to at least 25% of the Voting Rights."

Plaintiff claims that the Trustee breached the duty to "enforce the Trust's right to the full Termination Price required by Section 9.01 of the PSA" and an alleged duty to give the servicer "notice of an Event of Default under Section 7.01[a][i] and [ii] of the PSA" (SAC, ¶¶ 121, 123). Again, under the PSA, the Trustee has no involvement at all in the calculation of the Termination Price. It has no power to demand a certain termination amount. It is other transaction parties (i.e., the Servicer) who had the duty to calculate the Termination Price. Merely because the Trustee holds the loans in trust does not imply enforcement duties. Plaintiff should know this having been down this road before and lost in a different case involving similar trusts (*see Finkelstein v U.S. Bank, Natl Ass'n*, 219 AD3d 401, 402, [1st Dept 2023] [Trustee did not have enforcement duty regarding fixing document defects]).

Plaintiff alleges that US Bank breached its duty "to exercise due care in the performance of ministerial acts" (SAC, ¶ 65). However, this alleged duty has nothing to do with any supposed duty to enforce a particular calculation method to reach the Termination Price. Certainly, enforcing a particular calculation method or a particular termination price is not ministerial

651317/2023 STEPHEN FINKELSTEIN vs. U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE (AND ANY PREDECESSORS OR SUCCESSORS THERETO) ET AL Motion No. 005

Page 4 of 6

4 of 6

[* 4]

Nor did the Trustee have a duty to provide notice of servicer failures. Under section 7.05 [a] [i], the Trustee is permitted to give notice, but it has no affirmative duty to do so. To the extent that plaintiff claims US Bank should have notified Certificate Holders that the Termination Price was insufficient, US Bank had no such duty. In the PSA at issue, section 7.03 [b] imposes that duty on only the Master Servicer, not the Trustee.

To the extent plaintiff alleges the Trustee was not independent, plaintiff has failed to allege that this Trustee suffered from any conflicts (*see* discussion in this court's decision and order resolving Mot. Seq. Nos. 6-8, contemporaneously released with this decision).

*CeCe & Co. Ltd. v U.S. Bank, Natl. Ass'n* (153 AD3d 275, 282 [1st Dept 2017]) is inapposite. In that case, the Trustee *itself* exercised Termination rights to the detriment of Certificate Holders. *HBK Master Service Fund L.P. v Newrez LLC* (2025 WL 1868007 [Sup Ct, NY County, July 7, 2025]) is not particularly helpful, because, as the court noted in upholding the no action clause in that case, there were no claims against the trustee (*id*. at *11 n 11).

In short, other than alleging a wide-ranging conspiracy without substantive reference to US Bank, plaintiff never explains why it would be futile to ask US Bank to take action against the Servicer and the Master Servicer. Again, (1) the Trustee was entitled to rely on the calculations from other transaction parties (PSA, § 8.02 [a] [i]); and (2) the Trustee was not required to investigate a supposed EOD unless it receives notice (PSA, § 8.02 [v]), which plaintiff has steadfastly refused to give.

Finally, because the court is dismissing the case, the issue concerning US Bank's contractual right to indemnification from the Trust for expenses and costs incurred in this litigation is moot, as the Trustee concedes (*see* Trustee Defendants' Omnibus Memorandum of Law in Support of Their Motions to Dismiss Plaintiff's Amended Complaints, at 6 n 6).

**651317/2023  STEPHEN FINKELSTEIN vs. U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE** **Page 5 of 6**
**(AND ANY PREDECESSORS OR SUCCESSORS THERETO) ET AL**
**Motion No. 005**

[* 5]

5 of 6

The court has considered plaintiff's remaining contentions and finds them unavailing.

Accordingly, it is

ORDERED THAT the court grants the motion of US Bank National Association's motion [Motion Seq. No. 05) to dismiss, and the Second Amended Complaint is dismissed in its entirety as against this defendant; and it is further

ADJUDGED, DECREED AND DECLARED THAT plaintiff is not entitled to a declaratory judgment stating that "Defendants are not entitled to be indemnified by the Trust Fund" because this request is moot.

The Clerk is directed to mark this case disposed.

| | |
|---|---|
| **7/30/2025** | |
| **DATE** | **MELISSA A. CRANE, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

651317/2023  STEPHEN FINKELSTEIN vs. U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE
(AND ANY PREDECESSORS OR SUCCESSORS THERETO) ET AL
Motion No. 005

Page 6 of 6

6 of 6